IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| 2223 LOMBARDY WAREHOUSE, LLC, et al., | § § § | |
| Plaintiffs, | § § | |
| VS. | § § | Civil Action No. 3:17-CV-2795-D |
| MOUNT VERNON FIRE INSURANCE COMPANY, | § § § | |
| Defendant. | § § § | |

## MEMORANDUM OPINION
## AND ORDER

In this removed action arising from an insurance coverage dispute, plaintiffs 2223 Lombardy Warehouse, LLC and Broadway Lindbergh, LLC allege that defendant Mount Vernon Fire Insurance Company ("Mount Vernon") and former defendant James Greenhaw ("Greenhaw")[1] wrongfully denied plaintiffs' hail-damage claim. Mount Vernon moves for summary judgment.[2] Because plaintiffs have produced sufficient evidence to create a genuine dispute of material fact as to all of their claims, the court denies the motion.

---

[1]Greenhaw was dismissed as a defendant by joint stipulation of dismissal on February 27, 2019. As the court explains below, his dismissal impacts the question whether the court has subject matter jurisdiction.

[2]Greenhaw moved for summary judgment in the same motion, but that part of the motion is now moot in light of the joint stipulation of dismissal.

I

At issue is a Mount Vernon insurance policy ("the Policy") covering plaintiffs' commercial property located on Addison Road in Addison, Texas.[3] The Policy was in effect from December 8, 2015 until December 8, 2016. It excluded from coverage wear and tear, inadequate maintenance, and similar causes of harm. The Policy also contained the following limitation:

> Limitations On Coverage For Roof Surfacing
> . . .
> B. The following applies with respect to loss or damage by wind and/or hail to a building or structure[:] . . . We will not pay for cosmetic damage to roof surfacing caused by wind and/or hail. For the purpose of this endorsement, cosmetic damage means that the wind and/or hail caused marring, pitting or other superficial damage that altered the appearance of the roof surfacing, but such damage does not prevent the roof from continuing to function as a barrier to entrance of the elements to the same extent as it did before the cosmetic damage occurred.

Ds. App. 516. The parties do not dispute that hail damage is covered except to the extent that the Policy explicitly limits coverage.

In March 2017 a tenant at the property noticed a ceiling leak and informed plaintiffs' representative George Kondos ("Kondos") about the problem. Kondos hired a roofer, who concluded that the property's modified-bitumen roof had been damaged by hail. The roofer

---

[3]In deciding this summary judgment motion, the court views the evidence in the light most favorable to plaintiffs as the summary judgment nonmovants and draws all reasonable inferences in their favor. *See, e.g., Owens v. Mercedes-Benz USA, LLC*, 541 F.Supp.2d 869, 870 n.1 (N.D. Tex. 2008) (Fitzwater, C.J.) (citing *U.S. Bank Nat'l Ass'n v. Safeguard Ins. Co.*, 422 F.Supp.2d 698, 701 n.2 (N.D. Tex. 2006) (Fitzwater, J.)).

estimated that the damage occurred during a storm in March or April of 2016. Plaintiffs submitted a claim to Mount Vernon on March 15, 2017. Mount Vernon in turn hired independent adjuster Greenhaw to investigate on its behalf.

Greenhaw, along with a roofer hired by plaintiffs, inspected the property on March 16, 2017. After the inspection, Greenhaw submitted to Mount Vernon an estimate that valued the cost of replacing the roof at $50,354.73. After speaking with Greenhaw, Mount Vernon hired an engineer—Owen Tolson, P.E. ("Tolson") of Tolson Engineering—to investigate further. Tolson concluded that there was hail damage to some metal appurtenances on the roof, but no hail damage to the surface of the roof itself. Accordingly, Greenhaw issued a second damage estimate, for $5,723.41, in April 2017. The second estimate did not include a roof replacement. Because the total amount of the estimate was less than plaintiffs' deductible, Mount Vernon denied plaintiffs' claim.

Plaintiffs filed this suit in Texas state court in August 2017. They assert claims for breach of contract, violations of Tex. Ins. Code Ann. §§ 541-542 (West 2009 & Supp. 2018), violations of the Texas Deceptive Trade Practices-Consumer Protection Act ("DTPA"), Tex. Bus & Com. Code Ann. §§ 17.41-17.63 (West 2011 & Supp. 2018), and breach of the common-law duty of good faith and fair dealing.

After filing suit, plaintiffs hired Neil B. Hall, Ph.D., P.E., A.I.A. ("Dr. Hall) of GroundTruth Forensics to conduct an inspection of the property. Dr. Hall concluded that a hail storm on April 20, 2016 had caused "granule loss" in the upper layer of the modified-bitumen roof. According to Dr. Hall, this granule loss would allow ultraviolet radiation to

harden and eventually crack the lower layers of the roof, creating entry points for water. Dr. Hall thus opined that hail damage had shortened the service life of the roof, and that the roof needed to be replaced.

Plaintiffs brought suit in Texas state court against both Mount Vernon and Greenhaw. Mount Vernon removed the case to this court based on diversity of citizenship, contending that Greenhaw—a Texas citizen—had been improperly joined. Plaintiffs never moved to remand. Mount Vernon and Greenhaw then filed the instant motion for summary judgment. After briefing on the motion had been completed, the court raised *sua sponte* the question whether it had subject matter jurisdiction and ordered the parties to brief the issue of improper joinder. Mount Vernon filed a brief in accordance with the court's order. Greenhaw has been dismissed by joint stipulation. Because the court does not anticipate receipt of further jurisdictional briefing, it now considers the question whether it has subject matter jurisdiction, and, if it does, the merits of Mount Vernon's summary judgment motion.

II

The court concludes that it has subject matter jurisdiction.

A

For a case to be removed based on diversity jurisdiction, "all persons on one side of the controversy [must] be citizens of different states than all persons on the other side." *Harvey v. Grey Wolf Drilling Co.*, 542 F.3d 1077, 1079 (5th Cir. 2008) (quoting *McLaughlin v. Miss. Power Co.*, 376 F.3d 344, 353 (5th Cir. 2004)). "The jurisdictional facts that support removal must be judged at the time of the removal." *Gebbia v. Wal-Mart Stores, Inc.*, 233

F.3d 880, 883 (5th Cir. 2000) (citations omitted). Moreover, under 28 U.S.C. § 1441(b), a case cannot be removed based on diversity jurisdiction if any properly joined defendant is a citizen of the state in which the action is brought (here, Texas).

In this case, both plaintiffs are citizens of Texas, and defendant Mount Vernon is a citizen of Pennsylvania. Defendant Greenhaw is a citizen of Texas, thus destroying diversity. But the subsequent dismissal of Greenhaw is sufficient to confer jurisdiction on this court. Although diversity is ordinarily determined by the citizenship of the parties at the time that the notice of removal is filed, *see Gebbia*, 233 F.3d at 883, "the dismissal of the party that . . . destroyed diversity" has "long been an exception to the time-of-filing rule," *Grupo Dataflux v. Atlas Global Grp., L.P.*, 541 U.S. 567, 572 (2004) (citing *Caterpillar Inc. v. Lewis*, 519 U.S. 61, 73 (1996) (concluding that federal court had jurisdiction over case where complete diversity was lacking at time of removal, but jurisdictional defect was cured by dismissal of diversity-destroying party before trial)); *see also Burleson v. Coastal Recreation, Inc.*, 572 F.2d 509, 514 (5th Cir. 1978) ("In this circuit we have permitted parties who were not indispensable to be dropped from an action in order to achieve complete diversity either on the motion of the parties or on the court's own motion."); *Chau Van Nguy v. Sawyer*, 2013 WL 4538203, at *1 (M.D. La. Aug. 27, 2013) (stating the same). Therefore, when the parties[4] dismissed Greenhaw by stipulation, the court obtained subject matter

_____

[4]The joint stipulation of dismissal, although filed by plaintiffs, contains the representation "that all parties to this matter agree to this Stipulation of Dismissal pursuant to F.R.C.P. 41(a)(1)(A)(ii)." Jt. Stip. Dismissal 1.

jurisdiction—even if jurisdiction had previously been lacking.[5]

B

Moreover, the court agrees with Mount Vernon that Greenhaw was improperly joined. The court therefore had subject matter jurisdiction at the time of removal, regardless of the effect of Greenhaw's dismissal.

1

The doctrine of improper joinder is a narrow exception to the rule of complete diversity, and it "entitle[s] a defendant to remove to a federal forum unless an in-state defendant has been 'properly joined.'" *Smallwood v. Ill. Cent. R.R. Co.*, 385 F.3d 568, 573 (5th Cir. 2004) (en banc); *see also Meritt Buffalo Events Ctr. LLC v. Cent. Mut. Ins. Co.*, 2016 WL 931217, at *2 (N.D. Tex. Mar. 11, 2016) (Fitzwater, J.). The doctrine allows federal courts to defend against attempts to manipulate their jurisdiction, such as by joining nondiverse parties solely to deprive federal courts of diversity jurisdiction. *See Smallwood*, 385 F.3d at 576. Because "the effect of removal is to deprive the state court of an action

_____

[5]The fact that the court now has subject matter jurisdiction does not necessarily mean that the removal of this case was statutorily proper: 28 U.S.C. § 1441(a) requires that "the case be fit for federal adjudication at the time the removal petition is filed." *Caterpillar*, 519 U.S. at 73. But statutory defects to removal, unlike jurisdictional defects, can be waived. *See Williams v. AC Spark Plugs Div. of Gen. Motors Corp.*, 985 F.2d 783, 787 (5th Cir. 1993) ("[E]ven if a statutory provision prohibits the defendant from removing the action and the defendant removes despite a statutory proscription against such removal, the plaintiff must object to the improper removal within thirty days after the removal, or he waives his objection."). In the present case, plaintiffs never objected to removal; to the contrary, plaintiffs joined in Greenhaw's dismissal from the case, apparently in lieu of responding to Mount Vernon's briefing on improper joinder. Plaintiffs have thus waived any procedural objection to removal.

properly before it, removal raises significant federalism concerns." *Gasch v. Hartford Accident & Indem. Co.*, 491 F.3d 278, 281 (5th Cir. 2007) (quoting *Carpenter v. Wichita Falls Indep. Sch. Dist.*, 44 F.3d 362, 365-66 (5th Cir. 1995)). Therefore, the removal statute is strictly construed, with "any doubt about the propriety of removal [being] resolved in favor of remand." *Id.* at 281-82. In determining whether a party was improperly joined, the court "resolve[s] all contested factual issues and ambiguities of state law in favor of the plaintiff." *Id.* at 281. The party seeking removal bears a heavy burden to prove improper joinder. *Smallwood*, 385 F.3d at 574.

Improper joinder is established by showing that there was either actual fraud in the pleading of jurisdictional facts or that the plaintiff is unable to establish a cause of action against the nondiverse defendant in state court. *Parsons v. Baylor Health Care Sys.*, 2012 WL 5844188, at *2 (N.D. Tex. Nov. 19, 2012) (Fitzwater, C.J.) (citing *Smallwood*, 385 F.3d at 573). Under the second alternative—the one at issue in this case—the test for improper joinder is "whether the defendant has demonstrated that there is no possibility of recovery by the plaintiff against an in-state defendant, which stated differently means that there is no reasonable basis for the district court to predict that the plaintiff might be able to recover against an in-state defendant." *Smallwood*, 385 F.3d at 573; *see also Travis v. Irby*, 326 F.3d 644, 648 (5th Cir. 2003) (explaining that terms "no possibility" of recovery and "reasonable basis" for recovery have essentially identical meaning, and holding that pleadings must show more than "any mere theoretical possibility of recovery"). To assess "whether a plaintiff has a reasonable basis of recovery under state law,"

> [t]he court may conduct a [Fed. R. Civ. P.] 12(b)(6)-type analysis, looking initially at the allegations of the complaint to determine whether the complaint states a claim under state law against the in-state defendant. Ordinarily, if a plaintiff can survive a Rule 12(b)(6) challenge, there is no improper joinder. That said, there are cases, hopefully few in number, in which a plaintiff has stated a claim, but has misstated or omitted discrete facts that would determine the propriety of joinder. In such cases, the district court may, in its discretion, pierce the pleadings and conduct a summary inquiry.

*Smallwood*, 385 F.3d at 573 (footnotes omitted).

When deciding whether a defendant has been improperly joined, a federal district court must apply the federal pleading standard. *See Int'l Energy Ventures Mgmt., L.L.C. v. United Energy Grp. Ltd.*, 818 F.3d 193, 207-08 (5th Cir. 2016) (on rehearing). This standard requires the plaintiff to plead enough facts "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*; *see also Twombly*, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level[.]"). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'shown'—'that the pleader is entitled to relief.'" *Iqbal*, 566 U.S. at 679 (alteration omitted) (quoting Rule 8(a)(2)). Furthermore, under Rule 8(a)(2), a pleading must contain "a short

and plain statement of the claim showing that the pleader is entitled to relief." Although "the pleading standard Rule 8 announces does not require 'detailed factual allegations,'" it demands more than "labels and conclusions." *Iqbal*, 566 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). And "a formulaic recitation of the elements of a cause of action will not do." *Id.* (quoting *Twombly*, 550 U.S. at 555).

2

Mount Vernon has met its heavy burden of establishing improper joinder. The court bases its analysis on plaintiffs' state-court petition, and not on the first amended complaint that plaintiffs filed in federal court, because, as noted above, diversity is ordinarily determined at the time of removal. *See, e.g., Rockbrook Realty Ltd. v. Travelers Lloyds Ins. Co.*, 2016 WL 8674683, at *5 (N.D. Tex. Nov. 18, 2016) (Fitzwater, J.). The petition alleges that Mount Vernon assigned Greenhaw to be the adjuster for plaintiffs' hail-damage claim. Greenhaw allegedly hired Tolson instead of inspecting the property himself, and then—based on Tolson's outcome-oriented inspection—wrote an estimate of damages that fell below plaintiffs' deductible. Plaintiffs allege that these actions violated Tex. Ins. Code Ann. §§ 541.051, 541.060(a)(1), 541.060(a)(2)(A), 541.060(a)(3), 541.060(a)(4), 541.060(a)(7), and 541.061, as well as the common-law duty of good faith and fair dealing that Greenhaw allegedly owed to plaintiffs.

Plaintiffs' claims against Greenhaw under the Insurance Code fail as a matter of law. Plaintiffs allege that Greenhaw violated § 541.051 by "making statements misrepresenting the terms and/or benefits of the policy." Pet. ¶ 24(1). But the only actions attributed to

Greenhaw by the petition relate to the estimation of damages, and involve no representations about the terms of the Policy itself. These actions are beyond the scope of § 541.051. *See Rockbrook*, 2016 WL 8674683, at *3 ("Section 541.051 only applies, however, 'to misrepresentations regarding the policy at issue, not facts underlying a claim for coverage.'" (quoting *McClelland v. Chubb Lloyds Ins. Co. of Tex.*, 2016 WL 5791206, at *5 (W.D. Tex. Sept. 30, 2016))).

Plaintiffs' claim against Greenhaw under § 541.060(a)(1) fails for a similar reason. Section 541.060(a)(1) prohibits "misrepresenting to a claimant a material fact or policy provision relating to coverage at issue." "The misrepresentation must be about the details of a policy, not the facts giving rise to a claim for coverage." *Rockbrook*, 2016 WL 8674683, at *3 (quoting *One Way Invs., Inc. v. Century Sur. Co.*, 2014 WL 6991277, at *4 (N.D. Tex. Dec. 11, 2014) (Fitzwater, J.)). Greenhaw's alleged misrepresentation, which is about the amount of damage, if any, caused by hail, does not relate to the coverage at issue.

Plaintiffs cannot recover from Greenhaw under § 541.060(a)(2)(A), which prohibits "failing to attempt in good faith to effectuate a prompt, fair, and equitable settlement of . . . a claim with respect to which the insurer's liability has become reasonably clear." Greenhaw, as an adjuster, has no settlement authority and therefore cannot be liable under § 541.060(a)(2)(A). *See Rockbrook*, 2016 WL 8674683, at *3.

Adjusters like Greenhaw also cannot be held liable under § 541.060(a)(3) and (a)(4). "[A]n adjuster cannot be held liable under [§ 541.060(a)(4)(A) ] because an adjuster does not have authority on behalf of the insurer to affirm or deny coverage of a claim to a

policyholder." *Mainali Corp. v. Covington Specialty Ins. Co.*, 2015 WL 5098047, at *4 (N.D. Tex. Aug. 31, 2015) (Fitzwater, J.) (second alteration in original) (quoting *One Way*, 2014 WL 6991277, at *5). "Similarly, an adjuster cannot be held liable under § 541.060(a)(3) because an adjuster has no obligation to provide a policyholder a reasonable explanation of the basis in the policy for the insurer's denial of a claim, or offer of a compromise settlement of a claim." *Id.*

Plaintiffs cannot recover from Greenhaw under § 541.060(a)(7) for refusing to pay a claim without conducting a reasonable investigation.

> Like [§ 541.060(a)(2) ] the bad behavior that the statute targets is an insurer's refusal to pay under certain circumstances. Those who can be held liable are the insurance company or the individual at the insurance company who refuses to pay the claim, not the individual responsible for conducting the investigation.

*Rockbrook*, 2016 WL 8674683, at *4 (alteration in original) (quoting *One Way*, 2014 WL 6991277, at *4).

Plaintiffs allege that Greenhaw violated various provisions of § 541.061. "Similar to § 541.051, § 541.061 prohibits misrepresentation of policy provisions." *Id.* Plaintiffs do not allege that Greenhaw misrepresented any terms of the Policy. "Relief under § 541.061 is therefore unavailable." *Id.* (citing *Vasquez v. Wal-Mart Assocs., Inc.*, 2012 WL 2715691, at *4 (N.D. Tex. July 9, 2012) (Fish, J.)).

Plaintiffs' claim that Greenhaw breached his duty of good faith and fair dealing also fails. "[U]nder Texas law, an independent insurance adjuster owes no duty of good faith and

fair dealing to the insured." *Hall v. Am. Zurich Ins. Co.*, 2013 WL 12128719, at *2 (N.D. Tex. Jan. 31, 2013) (Means, J.) (quoting *Great W. Inn v. Certain Underwriters at Lloyds of London*, 2011 WL 1157620, at *5 (S.D. Tex. Mar. 24, 2011)); *accord Wang v. Safeco Ins. Co. of Ind.*, 2017 WL 2664207, at *4 (E.D. Tex. June 2, 2017); *Kris Hosp. LLC v. Tri-State Ins. Co. of Minn.*, 2017 WL 437424, at *6 (W.D. Tex. Jan. 31, 2017); *CD Mgmt. Corp. v. Nationwide Prop. & Cas. Ins. Co.*, 2009 WL 9072641, at *5 (S.D. Tex. July 28, 2009) (Rosenthal, J.); *see also Natividad v. Alexsis, Inc.*, 875 S.W.2d 695, 697-98 (Tex. 1994) (stating that, in insurance context, duty of good faith and fair dealing only arises when there is a contract giving rise to a special relationship).[6]  Plaintiffs do not allege the existence of any contract between themselves and Greenhaw.  Thus Greenhaw did not owe plaintiffs a duty of good faith and fair dealing.

Because there is no possibility that plaintiffs can recover from Greenhaw, the court concludes that Greenhaw was improperly joined.

III

Mount Vernon moves for summary judgment on several claims for which plaintiffs will bear the burden of proof at trial, and on one affirmative defense for which Mount Vernon will bear the burden.

---

[6]The petition does not expressly call Greenhaw an *independent* claims adjuster.  To the extent this omitted fact bears on the propriety of Greenhaw's joinder, the court may pierce the pleadings and look at the evidence submitted in support of summary judgment. *See Smallwood*, 385 F.3d at 573.  The uncontroverted evidence indicates that Greenhaw was employed by Vericlaim, Inc., and not by Mount Vernon.

When a party moves for summary judgment on claims on which the opposing parties will bear the burden of proof at trial, the moving party can meet its summary judgment obligation by pointing the court to the absence of admissible evidence to support the opposing parties' claims. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Once the moving party does so, the opposing parties must go beyond their pleadings and designate specific facts showing that there is a genuine issue for trial. *See id.* at 324; *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (per curiam). An issue is genuine if the evidence is such that a reasonable jury could return a verdict in the opposing parties' favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The opposing parties' failure to produce proof as to any essential element of a claim renders all other facts immaterial. *See TruGreen Landcare, L.L.C. v. Scott*, 512 F.Supp.2d 613, 623 (N.D. Tex. 2007) (Fitzwater, J.). Summary judgment is mandatory if the opposing parties fail to meet this burden. *Little*, 37 F.3d at 1076.

For claims on which the moving party will bear the burden of proof at trial, to be entitled to summary judgment the movant "must establish 'beyond peradventure all of the essential elements of the claim.'" *Bank One, Tex., N.A. v. Prudential Ins. Co. of Am.*, 878 F. Supp. 943, 962 (N.D. Tex. 1995) (Fitzwater, J.) (quoting *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986)). This means that the movant must demonstrate that there are no genuine and material fact disputes and that it is entitled to summary judgment as a matter of law. *See Martin v. Alamo Cmty. Coll. Dist.*, 353 F.3d 409, 412 (5th Cir. 2003). "The court has noted that the 'beyond peradventure' standard is 'heavy.'" *Carolina Cas. Ins.*

*Co. v. Sowell*, 603 F.Supp.2d 914, 923-24 (N.D. Tex. 2009) (Fitzwater, C.J.) (quoting *Cont'l Cas. Co. v. St. Paul Fire & Marine Ins. Co.*, 2007 WL 2403656, at *10 (N.D. Tex. Aug. 23, 2007) (Fitzwater, J.)).

IV

The court now turns to plaintiffs' breach of contract claim.

A

Plaintiffs have produced sufficient evidence to create a genuine dispute of material fact regarding whether their claim is covered by the Policy. They rely on the opinion of their retained expert, Dr. Hall, who opines that the roof was most likely damaged by hail on April 20, 2016, and that the damage to the roof is functional.

An insured cannot recover under an insurance policy unless the insured pleads and proves facts that show that its damages are covered by the policy. *See Emp'rs Cas. Co. v. Block*, 744 S.W.2d 940, 944 (Tex. 1988), *overruled in part on other grounds by State Farm Fire & Cas. Co. v. Gandy*, 925 S.W.2d 696, 714 (Tex. 1996). Mount Vernon maintains that Dr. Hall's opinion constitutes no evidence because it is conclusory and baseless. In support, Mount Vernon cites *Seim v. Allstate Texas Lloyds*, 2018 WL 5832106 (Tex. App. Nov. 8, 2018), *withdrawn and reh'g en banc granted*, No. 02-16-0050-CV (Tex. App. Feb. 25, 2019). In *Seim* the court disregarded Dr. Hall's opinion on the cause of the plaintiffs' interior water damage. Noting that "[a] conclusory statement by an expert witness is insufficient to raise a question of fact to defeat summary judgment," the court found that "Hall's report and its supplement merely contain bare, baseless (and contradictory) opinions that fail to link his

conclusions to the facts." *Id.* at *4, *7. But unlike in the present case, in *Seim* Dr. Hall submitted an initial report and a supplemental report that contradicted each other in critical ways. *See id.* at *6-7. The *Seim* court, unable to reconcile how Dr. Hall drew "the opposite conclusions from the same facts," disregarded his conclusion that the damage at issue was solely caused by a covered peril. *Id.* at *7.

In the present case, Dr. Hall's conclusions are adequately supported by the underlying facts. During his inspection of the property, Dr. Hall observed that the roof surface was "peppered" with hail strikes—with a hail strike defined as "a nearly round location where the granules have been removed to expose the asphalt-impregnated underlayment." Ps. App. 104. He opined that these areas of degranulation will eventually become entry points for water, thus constituting functional damage—although he did not observe any evidence of existing leaks caused by degranulation. Moreover, he provided support for his conclusion that the damage most likely occurred during the coverage period. In his review of public-domain weather radar data, he found that hail fell within half a mile of the plaintiffs' property on April 20, 2016, thus making it the most probable date of loss. Both he and Tolson also discussed data indicating that hail fell within a few miles of the property on March 23, 2016—another covered date. Dr. Hall did not consider any weather data from more than three years before April 2016, because the coloration of the hail strikes on the roof indicated that they were no more than three or four years old. Within that three-year window, Dr. Hall found no eyewitness reports of any other storms that might have caused the damage he observed. While the court expresses no opinion at this juncture on the weight or credibility

of Dr. Hall's conclusions, it holds that these conclusions are sufficiently supported as to constitute admissible summary judgment evidence that can be relied on by a reasonable trier of fact.

B

Mount Vernon posits that plaintiffs have not met their burden of segregating harm resulting from concurrent causes. Although an insured who suffers damage from both covered and excluded perils is not precluded from recovering, "[w]hen covered and excluded perils combine to cause an injury, the insured must present some evidence affording the jury a reasonable basis on which to allocate the damage." *Lyons v. Millers Cas. Ins. Co. of Tex.*, 866 S.W.2d 597, 601 (Tex. 1993). Because an insured can only recover for covered events, the burden of segregating the damage attributable solely to the covered event is a coverage issue for which the insured carries the burden of proof. *See Wallis v. United Servs. Auto. Ass'n*, 2 S.W.3d 300, 303 (Tex. App. 1999, pet. denied). "It is essential that the insured produce evidence which will afford a reasonable basis for estimating the amount of damage or the proportionate part of damage caused by a risk covered by the insurance policy." *Travelers Indem. Co. v. McKillip*, 469 S.W.2d 160, 163 (Tex. 1971). "[F]ailure to segregate covered and noncovered perils is fatal to recovery." *Comsys Info. Tech. Servs., Inc. v. Twin City Fire Ins. Co.*, 130 S.W.3d 181, 198 (Tex. App. 2003, pet. denied); *Dall. Nat'l Ins. Co. v. Calitex Corp.*, 458 S.W.3d 210, 227 (Tex. App. 2015, no pet.) (holding there was no reasonable basis for estimating amount of damage caused by risk covered by the insurance policy).

According to Mount Vernon, Dr. Hall's testimony indicates that plaintiffs' roof was damaged by both covered and non-covered causes of loss. Dr. Hall testified that some of the degranulation of the roof was caused by ordinary wear and tear rather than by a hail storm. The court agrees that this is evidence of concurrent causes, thus triggering plaintiffs' burden to provide evidence by which a jury might reasonably apportion the resulting harm.[7]

Plaintiffs have met this burden. Plaintiffs are not obligated to present "overwhelming evidence that would allow a jury to flawlessly segregate covered . . . from non-covered" damages, or to provide "precise percentages." *Nasti v. State Farm Lloyds*, 2015 WL 150468, at *4 (S.D. Tex. Jan. 9, 2015) (first quoting *Fiess v. State Farm Lloyds*, 392 F.3d 802, 808 (5th Cir. 2004)). Although Dr. Hall himself made no attempt to segregate wear-and-tear damage from hail damage, he provided a reasonable basis on which a jury may do so. His testimony that a covered hail storm was the "predominant" cause of damage to plaintiffs' roof could be understood to mean that a majority, that is, greater than 50%, of the cost of the roof replacement is attributable to the storm. Ps. App. 27. Moreover, Dr. Hall proposed a

_____

[7]Dr. Hall also testified that he could not completely rule out the effects of prior storms: while it was "more likely than not" that all hail damage occurred on April 20, 2016, it was also possible that some damage had occurred earlier. Ds. App. 343. This testimony does not require the jury to apportion damage between covered and non-covered storms, however; instead, it presents a credibility issue as to whether Dr. Hall is correct that all storm damage occurred on the same covered date. *Cf. Southland Lloyds Ins. Co. v. Cantu*, 399 S.W.3d 558, 576 (Tex. App. 2011, pet. denied) ("[T]he jury here was not required to guess what percentage of the damage was caused by the hailstorm; instead, the jury was faced with a credibility question: the Cantus claimed all the damage itemized in Barton's report was due to hail, while Southland claimed some of the damage was caused by ordinary wear and tear.").

methodology for segregating harm that is simple enough for a lay jury to apply (at least roughly): one could start with photographs of areas of the roof that, according to Dr. Hall, are clearly damaged by wear and tear;[8] find those same areas on aerial photographs of the roof; and subtract the approximate percentage of the roof clearly damaged by wear and tear from the remainder of the roof that was damaged by hail. *Cf. Fiess*, 392 F.3d at 808 ("A jury could deduce that the excess mold damage in walls affected by continuous water intrusions is attributable to a covered loss. In addition, the jury could conclude that the mold contamination located above the maximum height reached by the flood waters is attributable to a covered loss. This is all that the doctrine of concurrent causation requires."). Dr. Hall's testimony suffices to provide a reasonable basis on which a jury could segregate damages.[9]

## C

Mount Vernon also maintains that plaintiffs failed to provide prompt notice of their

---

[8]The areas that Dr. Hall identified are a patch surrounding a glass flue that was likely damaged by heat, a patch around a cooling unit that may have been damaged by standing water, and areas that appear to be affected by wind abrasion. Dr. Hall suggested that this wear-and-tear damage would appear as "dark spots" on aerial photographs of the roof.

[9]Additionally, Dr. Hall and plaintiffs advance the theory that "[b]ecause the randomly distributed hail across the entire roof caused sufficient damage, the fact that the roof may have weathering or wear and tear is irrelevant, because it requires an entire roof replacement from the scattered hail." Ps. Br. 20-21. The court does not base its holding on this theory. "Texas courts have rejected the 'dominant or efficient cause test' that allows an insured to recover for losses caused by an excluded peril if the covered peril was found to have been the dominant cause of the loss." *State Farm Lloyds v. Kaip*, 2001 WL 670497, at *3 n.7 (Tex. App. 2001, pet. denied) (quoting *U.S. Fire Ins. Co. v. Matchoolian*, 583 S.W.2d 692, 693 (Tex. Civ. App. 1979, writ ref'd n.r.e.)). Plaintiffs must segregate damages at trial.

claim, as the Policy requires.[10]  Essentially, Mount Vernon contends that plaintiffs failed to

comply with a condition precedent in the Policy.  *See Flores v. Allstate Tex. Lloyd's Co.*, 278

F.Supp.2d 810, 815 (S.D. Tex. 2003).  Because failure to comply with a condition precedent

is an affirmative defense, Mount Vernon bears the burden of proof and must establish all

elements of its defense beyond peradventure.  *See id.* at 813; *Bank One, Tex.*, 878 F. Supp.

at 962.

"Texas courts have held that where 'the policy does not define the term "prompt," we

construe the term as meaning that notice must be given *within a reasonable time* after the

occurrence.'"  *Ridglea Estate Condo. Ass'n v. Lexington Ins. Co.*, 415 F.3d 474, 479 (5th Cir.

2005) (quoting *Stonewall Ins. Co. v. Modern Exploration, Inc.*, 757 S.W.2d 432, 435 (Tex.

App. 1988, no writ)).  In addition to showing that plaintiffs did not provide notice within a

reasonable time, Mount Vernon must establish that it was prejudiced by the delay.  *See

Hamilton Props. v. Am. Ins. Co.*, 643 Fed. Appx. 437, 440 (5th Cir. 2016) (per curiam)

(citing *Ridglea*, 415 F.3d at 480).  "Prejudice can arise when the failure to timely notify

results in the insurer's 'inability to investigate the circumstances of an occurrence to prepare

adequately to adjust or defend any claims.'"  *Id.* at 440-41 (quoting *Blanton v. Vesta Lloyds

Ins. Co.*, 185 S.W.3d 607, 615 (Tex. App. 2006, no pet.)).

Mount Vernon has not established beyond peradventure that it was prejudiced by

plaintiffs' 11-month delay in providing notice of their claim.  Mount Vernon contends,

_____

[10]The Policy requires the insured to "[g]ive . . . prompt notice of the loss or damage"
in the event that a loss or damage occurs.  Ds. App. 500.

without citing evidence, that the delay "may" have denied it the opportunity to document the condition of the roof immediately after the April 2016 hail storm.  Ds. Br. 21.  But Mount Vernon fails to explain *why* its inability to immediately inspect the roof is significant.  Indeed, Mount Vernon's experts, Greenhaw and Tolson, were both able to conclude that there is no functional hail damage to plaintiffs' roof—notwithstanding plaintiffs' delay in reporting the claim.  If there was no hail damage in March 2017, then there was no hail damage in April 2016, and an earlier inspection of the property would not have changed the result of Mount Vernon's investigation.  Mount Vernon's own evidence thus undercuts its prejudice argument.  *See Herrera v. State Farm Lloyds*, 2016 WL 10821984, at *3 (S.D. Tex. May 6, 2016) (concluding that insurer was not prejudiced by 700-day delay where insurer's representative was nonetheless able to affirmatively differentiate between hail damage and wear-and-tear damage); *cf. Hamilton Props.*, 643 Fed. Appx. at 439, 441 (finding that insurer *was* prejudiced where insured's delay made it impossible for insurer to determine whether hail damage was caused by a covered storm or by subsequent, non-covered storms).

V

The court next turns to plaintiffs' extra-contractual claims for violations of the DTPA, the Insurance Code, and the common-law duty of good faith and fair dealing.

A

Mount Vernon contends that plaintiffs' extra-contractual claims fail because plaintiffs have not submitted proof of any damages beyond the denial of their claim.  This argument is inconsistent with recent Texas case law as recognized by the Fifth Circuit.  Mount Vernon

relies on *Parkans Int'l LLC v. Zurich Ins. Co.*, 299 F.3d 514 (5th Cir. 2002), which states that, under Texas law, "[t]here can be no recovery for extra-contractual damages for mishandling claims unless the complained of actions or omissions caused injury independent of those that would have resulted from a wrongful denial of policy benefits." *Id.* at 519. But this language from *Parkans* has been abrogated by *USAA Texas Lloyds Co. v. Menchaca*, 545 S.W.3d 479 (Tex. 2018). *See Aldous v. Darwin Nat'l Assurance Co.*, 889 F.3d 798, 799 (5th Cir. 2018) (on rehearing) (acknowledging abrogation of *Parkans*). According to *Menchaca*, "an insured who establishes a right to receive benefits under an insurance policy can recover those benefits as 'actual damages' under the statute if the insurer's statutory violation causes the loss of the benefits." *Menchaca*, 545 S.W.3d at 495. The court has already determined that a genuine issue of material fact exists as to whether the hail damage to plaintiffs' roof is covered by the insurance policy. *See supra* § IV. Thus plaintiffs' claims do not fail due to plaintiffs' failure to produce evidence of extra-contractual damages.

B

Mount Vernon also posits that plaintiffs have failed to present any evidence of bad faith. To recover under their common-law and statutory bad-faith claims, plaintiffs must produce evidence that Mount Vernon acted in bad faith. *See Higginbotham v. State Farm Mut. Auto. Ins. Co.*, 103 F.3d 456, 460 (5th Cir. 1997) ("Texas courts have clearly ruled that [DTPA and Insurance Code] claims require the same predicate for recovery as bad faith causes of action in Texas."); *Sheffield v. Allstate Veh. & Prop. Ins. Co.*, 2018 WL 4076513, at *4-5 (N.D. Tex. July 3, 2018) (Ray, J.) (same). "To prove that an insurer acted in bad faith

in violation of Texas common law, an insured must show that the insurer failed to settle the claim even though it 'knew or should have known that it was reasonably clear that the claim was covered.'" *Lee v. Caitlin Specialty Ins. Co.*, 766 F.Supp.2d 812, 818 (S.D. Tex. 2011) (quoting *Universe Life Ins. Co. v. Giles*, 950 S.W.2d 48, 54–55 (Tex. 1997)). "Plainly put, an insurer will not be faced with a tort suit for challenging a claim of coverage if there was any reasonable basis for denial of that coverage." *Higginbotham*, 103 F.3d at 460 (citing *Emmert v. Progressive Cty. Mut. Ins. Co.*, 882 S.W.2d 32, 36 (Tex. App. 1994, writ denied)). But "denying a claim solely in reliance on an expert's report does not shield the insurer from bad faith liability 'if there is evidence that the report was not objectively prepared or the insurer's reliance on the report was unreasonable.'" *Lee*, 766 F.Supp.2d at 818 (quoting *State Farm Lloyds v. Nicolau*, 951 S.W.2d 444, 448 (Tex. 1997)).

Plaintiffs have adduced enough evidence of bad faith to survive summary judgment. They focus on the initial estimate that Greenhaw prepared after his inspection of plaintiffs' property, which included the cost of replacing the entire roof. After submitting the first estimate, Greenhaw contacted a representative of Mount Vernon "because of the . . . potential exposure" on the claim. Ps. App. 48. Mount Vernon's representative directed Greenhaw to hire an engineer to inspect the property. After Tolson submitted his report, Mount Vernon's representative told Greenhaw to exclude the roof replacement from his next estimate. Plaintiffs interpret this evidence to mean that Greenhaw originally believed that a roof replacement was necessary, but that Mount Vernon instructed him to change his recommendation for the purpose of wrongly denying plaintiffs' claim. This interpretation

of the evidence, if believed by the jury, would render unreasonable Mount Vernon's reliance on Tolson's report and Greenhaw's second estimate. *See Lee*, 766 F.Supp.2d at 818.

Mount Vernon counters with Greenhaw's deposition testimony that his first estimate was a "reserve estimate"—i.e., a rough estimate of the insurer's maximum possible exposure for a given claim. The purpose of the initial estimate was to ensure that Mount Vernon set aside enough reserve to satisfy the claim; it was not an estimate of covered damages. A reasonable jury may in fact believe this testimony. But a reasonable jury could also reject this testimony. Greenhaw's initial estimate was not labeled as a reserve estimate; to the contrary, it purported to be "based upon the actual damages viewed by the . . . adjuster at the time of the inspection of this loss." Ps. App. 57. The only evidence suggesting it was a reserve estimate is Greenhaw's own testimony. Thus in order to conclude at the summary judgment stage that a reasonable jury could *only* find that Greenhaw's first estimate was a reserve estimate, the court would have to disregard a number of evidentiary inferences that could be made in plaintiffs' favor *and* determine that Greenhaw is a credible witness. The court cannot do so under the summary judgment standard. *See, e.g., Ford v. Potter*, 2008 WL 4791511, at *4 & n.8 (N.D. Tex. Nov. 4, 2008) (Fitzwater, C.J.) (citing *Portis v. First Nat'l Bank of New Albany*, 34 F.3d 325, 331 (5th Cir. 1994)) (indicating that credibility issues "cannot be decided on summary judgment"); *Owens v. Mercedes-Benz USA, LLC*, 541 F.Supp.2d 869, 870 n.1 (N.D. Tex. 2008) (Fitzwater, C.J.) (citing *U.S. Bank Nat'l Ass'n v. Safeguard Ins. Co.*, 422 F.Supp.2d 698, 701 n.2 (N.D. Tex. 2006) (Fitzwater, J.)) (interpreting evidence in light most favorable to summary judgment nonmovant and drawing

all reasonable inferences in his favor). Accordingly, the court holds that there is a genuine issue of material fact whether Mount Vernon acted in bad faith, and that the existence of this fact issue precludes summary judgment in this respect.

                                    *     *     *

For the foregoing reasons, the court concludes that it has subject matter jurisdiction, and it denies Mount Vernon's motion for summary judgment.

**SO ORDERED**.

April 12, 2019.


                                    _____
                                    SIDNEY A. FITZWATER
                                    SENIOR JUDGE